UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/7/18

----------------------------------------------------------X

JESSE HAMMOCK,                              :
                                            :
                    Plaintiff,              :        15-CV-09052 (NSR)
        -against-                           :        OPINION & ORDER
                                            :
C.O. H. PIERCE, and LT. MAXWELL,            :
                                            :
                    Defendants.             :
----------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

Plaintiff Jesse Hammock commenced this pro se action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights by staff at Sullivan Correctional Facility, where he is currently incarcerated. (Compl., ECF No. 1; Am. Compl., ECF No. 8.) Specifically, Plaintiff contends that he has been subjected to frequent cell searches, drug testing, and confiscation of his personal belongings by Lieutenant Maxwell and Correctional Officer Pierce in retaliation for engaging in protected speech.

Presently before the Court is Defendant's motion for summary judgment on each of Plaintiff's claims. For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Searches of Plaintiff's Cell

Plaintiff Jesse Hammock is currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sullivan Correctional Facility ("Sullivan"). Since his arrival at Sullivan in October of 2014, Plaintiff's cell has been searched approximately twenty-six times. (Defs.' Statement Pursuant to Rule 56.1 ("Defs.' 56.1") ¶ 14,

ECF No. 39; Declaration of Joseph Maxwell ("Maxwell Decl.") ¶ 9, Ex. C, Cell Frisk Log Book, ECF No. 42.) Twenty-four of those searches were "routine" or "scheduled" searches, which are conducted each day pursuant to a list issued by the Deputy Superintendent for Security ("DSS") or his equivalent. (Defs.' 56.1 ¶¶ 7, 15; Maxwell Decl. ¶¶ 8, 9, Exs. B & C.) That list enumerates the cells to be searched each day and is generated randomly by a computer located in the Captain's Office of Sullivan's Administration Building. (Defs.' 56.1 ¶ 7; Maxwell Decl. ¶ 8.) In addition to these routine random searches, unscheduled searches may be conducted by staff when there is "reasonable suspicion that contraband is contained in the housing unit." (Defs.' 56.1 ¶ 8; Maxwell Decl. ¶ 8, Ex. B ¶ V(B)(4).) Only two of the twenty-six searches of Plaintiff's cell were unscheduled. (Defs.' 56.1 ¶ 8; Maxwell Decl. ¶ 9, Ex. C.)

Of the two unscheduled searches of Plaintiff's cell, only one was authorized by Defendant Maxwell. (Defs.' 56.1 ¶ 17; Maxwell Decl. ¶ 10.) Specifically, on November 3, 2015, Defendant Maxwell directed Defendant Pierce to search Plaintiff's cell based on information he allegedly received from a confidential informant that Plaintiff possessed a weapon. (*Id.*) Upon searching Plaintiff's cell, Defendant Pierce recovered approximately twenty-two items that he deemed contraband, including one bag of bowties, two nude pictures, one pair of boxing gloves, fifteen plastic garbage bags, and seven feet of electric wire. (Defs.' 56.1 ¶¶ 19 & 22; Declaration of Harold Pierce ("Pierce Decl.") ¶¶ 12 & 21, Ex. C, Nov. 3, 2015 Inmate Misbehavior Report, ECF No. 43.) Defendant Pierce removed the "contraband" items form Plaintiff's cell and issued an Inmate Misbehavior Report to Plaintiff along with five contraband receipts, purportedly listing the items removed from Plaintiff's cell. (Defs.' 56.1 ¶ 20; Pierce Decl. ¶ 12, Ex. C, November 3, 2015 Inmate Misbehavior report.) Plaintiff contends, however, that Defendant Pierce removed about seven cassette tapes and various magazines containing the teachings of his

religion, the Nation of Islam, that are not reflected in the contraband receipts. (Decl. of Neil

Shevlin, Ex. A, Excerpts from Dep. of Jesse Hammock ("Hammock Dep.") at 39:11-18, ECF

No. 41.) Defendants claim that no such items were ever confiscated from Plaintiff's cell. (Pierce

Decl. ¶ 18.) Plaintiff further contends that a number of bowties, which carry religious

significance, were also removed from his cell. (Hammock Dep. at 40:15–41:16.) Both parties

agree, however, that Plaintiff was permitted to keep seven black bow ties. (Defs.' 56.1 ¶ 23;

Hammock Dep. at 40:15-19 & 60:2–61:2.)

At a Tier II disciplinary hearing conducted on November 5, 2015, Plaintiff pled guilty to

four of the charges against him—unauthorized medication, property in an unauthorized area,

contraband, and tampering with property. (Defs.' 56.1 ¶ 25; Pierce Decl. ¶ 13. Ex. D, Hearing

Record Sheet and Disciplinary Hearing Disposition Forms.) At the conclusion of the hearing,

however, the hearing officer found Plaintiff guilty of only two of the charges against him—

unauthorized medication and property in an unauthorized area. (Defs.' 56.1 ¶ 26; Pierce Decl. ¶

13. Ex. D, Hearing Record Sheet and Disciplinary Hearing Disposition Forms.) The hearing

officer acquitted Plaintiff of all other charges, finding that the remaining seized items were not

contraband. (Defs.' 56.1 ¶ 26; Shevlin Decl., Ex. B Transcript of November 5, 2015 Disciplinary

Hearing at 15–16.) Plaintiff received a punishment of fifteen days' loss of recreation. (Defs.'

56.1 ¶ 27; Pierce Decl. ¶27 15, Ex. D.)

## II. Drug Testing

In addition to the frequent searches of his cell, Plaintiff claims he has also been subjected to

repeated drug testing throughout his period of incarceration at Sullivan. (Am. Compl. at 7.)

Directive 4937, which outlines DOCCS' policy on urinalysis reads, in relevant part:

> use by inmates of illicit drugs and alcohol presents a serious threat to the safety
> and security of a correctional facility. Urinalysis testing of inmates can be an

effective means by which to detect and discipline inmates who use illicit drugs or alcohol. Aggressive and consistent urinalysis testing will be one of many components of a program to ensure a drug-free environment within the Department's facilities.

(Defs.' 56.1 ¶ 29; Maxwell Decl. ¶13, Ex. E, Directive 4937 ¶ III.)

Inmates may be directed to provide a urine sample for testing pursuant to Directive 4937 in a variety of circumstances, including: (i) for random testing based on a list generated by a computer at DOCCS' Central Office in Albany, New York, (ii) for routine testing prior to and after an inmate participates in a Family Reunion Program visit in which the inmate is permitted to spend a longer than usual period of time with family members in private, and (iii) when staff have reason to believe the inmate is in possession of, or has used, drugs. (Defs.' 56.1 ¶ 30; Maxwell Decl. ¶ 14, Ex. E, ¶ IV (A)(2)(6) & (7).)

Between October 2014, when Plaintiff first arrived to Sullivan, to the filing date of this motion, Plaintiff had been subjected to drug testing approximately twenty-one times. (Defs. 56.1 ¶ 31; Maxwell Decl. ¶ 15, Ex. F, Inmate Drug Testing System DIN Inquiry.) All twenty-one of those tests were either random—i.e. computer-generated—or routine tests conducted prior to or following a family visit. (*Id.*) None of Plaintiff's drug tests at Sullivan have been conducted pursuant to staff authorization for suspicion of drug use. (*Id.*)

### III. Plaintiff's Retaliation Claims

Plaintiff alleges that Defendant Maxwell has orchestrated a campaign of retaliation against him that has included both frequent cell searches and constant drug testing. (*See* Am. Compl. at 6.) Plaintiff maintains that these retaliatory acts are the result of: (1) Plaintiff serving as a witness against Defendant Maxwell in a federal lawsuit brought by a fellow inmate, (2) Plaintiff giving a signed statement to the New York State Police in connection with the death of an inmate at Sullivan in April, 2015, (3) Plaintiff's numerous grievances and complaints during his

incarceration at Sullivan, and (4) Plaintiff's work as a paralegal in Sullivan's Law Library. (*Id.*)

## IV. Procedural History

Plaintiff commenced the present §1983 action on November 17, 2015, and subsequently filed an Amended Complaint on March 08, 2016. (ECF Nos. 1 & 8.) Defendants filed an Answer to the Amended Complaint on July 05, 2016, (ECF No. 19), and moved for summary judgment following the close of discovery on August 10, 2017. (ECF No. 37.) Specifically, Defendants contend that Plaintiff has failed to adduce evidence of any constitutional violations and that even if the evidence did support the finding of any such violation, they are entitled to qualified immunity. (Defs.' Mot. for Summ. J. at 1.) The Court now considers each of Defendant's arguments in turn.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order).

Summary judgment is appropriate where a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## DISCUSSION

### I. Confiscation of Religious Items

### A. Free Exercise

Plaintiff maintains that Defendants violated his First Amendment right to free exercise of religion by confiscating various items of religious significance from his cell, including a number of bowties, cassette tapes, and religious magazines. (Am. Compl. at 3.) Defendants argue, however, that they are entitled to summary judgment on Plaintiff's claim because their purported actions did not substantially burden Plaintiff's religious beliefs.[1] (Defs.' Mot at 18.) Defendants further contend that even if Plaintiff's free exercise rights were violated, they are entitled to qualified immunity. (*Id.* at 24.) This Court disagrees and denies Defendant's motion for summary judgment on Plaintiff's First Amendment free exercise claim.

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153,

---

[1] The Court notes that Defendants do not challenge the sincerity of Plaintiff's religious beliefs.

157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). However, the Second Circuit has acknowledged that, "although prisoners do not abandon their constitutional rights at the prison door, [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted). Accordingly, the First Amendment protection afforded to inmates must be balanced with "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588.

To establish a Free Exercise claim, an inmate plaintiff must typically "make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." [2] *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015). "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to

---

[2] The Second Circuit has not decided whether the substantial burden standard remains viable following the Supreme Court's suggestion in *Employment Division v. Smith*, 494 U.S. 872, 887 (1990), that such a test "embroils courts in the unacceptable business of evaluating the relative merits of differing religious claims." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (internal quotation marks omitted). Courts in this district have nonetheless continued to apply the substantial burden test absent any contrary instruction from the Second Circuit, particularly where, as here, the continuing vitality of the standard has not been questioned by either party. *See, e.g.*, *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (assuming that the substantial burden test applies given plaintiff's failure to argue otherwise and because the parties had not briefed the issue); *Rossi v. Fischer*, No. 13-cv-3167 (PKC) (DF), 2015 WL 769551, at *6 n.8 (S.D.N.Y. Feb. 24, 2015) ("[T]he Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise."); *Vann v. Fischer*, No.11-CV-1958 (KPF), 2014 WL 4188077, at *8 n.14 (S.D.N.Y. Aug. 25, 2014) (noting that "[i]t is customary in this District, absent any contrary instruction from the Second Circuit, to assume that the substantial burden test survives").

modify his behavior and to violate his beliefs.'" *Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *10 (S.D.N.Y. Dec. 27, 2017) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task." *Rossi v. Fishcer*, No. 13-CV-3167 (PKC) (DF), 2015 WL769551, at *7 (S.D.N.Y. Feb. 24 2015) (internal quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004). Once a plaintiff has satisfied this threshold showing, the burden shifts to the defendants to identify legitimate penological interests that justify the restriction on the prisoner's right to freely exercise his religion. *Salahuddin*, 467 F.3d at 275.

Here, Plaintiff has satisfied the threshold showing. Admittedly, the confiscation of only a *portion* of Plaintiff's bowties—which Plaintiff himself acknowledges was a "minute" deprivation (*See* Hammock Dep. at 63:9–17)—does not amount to a substantial burden on his religious exercise. The same cannot be said however, about the alleged confiscation of Plaintiff's other religious materials and, in particular, the cassette tapes containing NOI teachings. Plaintiff testified during his deposition that the tapes "kept [him] on course to perform [his] duties as a member of the Nation of Islam." (*Id.*) Without the tapes, Plaintiff further testified, he was unable to recall particular prayers and adequately continue his NOI studies—a process that Plaintiff suggests is of great importance in his faith. (*Id.* at 64:11-24.) Plaintiff's testimony is enough to create a genuine issue of fact regarding whether Defendants substantially burdened his religious exercise. *See Morse v. Annucci*, No. 13-CV-1354 (LEK) (DEP), 2015 WL 5725046, at *5 (N.D.N.Y. Sept. 29, 2015) (finding the confiscation of a crucifix used for prayer sufficient to support a free exercise claim); *Dilworth v. Goldberg*, No. 10-CV-2224 (JMF), 2014 WL 3798631, at *9 (S.D.N.Y. Aug. 1, 2014) (noting that the confiscation of a bible can form the

basis for a free exercise claim); *Malik v. City of N.Y.*, No. 11-CV-6062 (PAC)(FM), 2012 WL 3345317, at *12 (S.D.N.Y. Aug 15, 2012) ("[The plaintiff's] allegations that he practices Islam and that [the defendants] ripped up and destroyed his sacred Quran states a legally sufficient claim under [ ] the Free Exercise Clause."), *report and recommendation adopted*, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).

Moreover, Defendants fail to identify any legitimate penological interest that justifies the confiscation of Plaintiff's religious tapes. Instead, Defendants argue that there is no record of such tapes ever being confiscated. (Pierce Decl. ¶ 18.) Whether Defendants actually confiscated the tapes, however, is a factual dispute ill-suited for resolution at the summary judgment stage.

Defendants further argue that even if religious tapes were confiscated from Plaintiff, such tapes would constitute contraband because they had not been reviewed and approved by the Media Officer at Sullivan. (Defs.' Mot. at 22.) Yet, beyond conclusorily labeling the tapes as "contraband," Defendants provide no *substantive* reason why Plaintiff's possession of such tapes would in any way affect institutional safety and order. Because Plaintiff has raised a genuine issue of fact regarding whether his sincerely held religious beliefs were burdened and Defendants have failed to identify any legitimate penological interest to justify that burden, the Court cannot find that Defendants are entitled to summary judgment.

Nor can the Court determine at this juncture that Defendants are entitled to qualified immunity. "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007)). In determining whether a right is clearly established, courts typically consider "whether the right in question was defined

with reasonable specificity, whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Barnes v. Furman*, 629 F. App'x 52, 55 (2d Cir. 2015) (summ. order) (internal quotations omitted) (quoting *Dean v. Blumenthal*, 577 F.3d 60, 68 (2d Cir. 2009) (per curiam)). Ultimately, qualified immunity is an affirmative defense on which Defendants bear the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

Here, Defendants fail to satisfy that burden. The Second Circuit has, for decades, recognized that prison officials may not substantially burden inmates' right to religious exercise without some justification. *Salahuddin*, 467 F.3d at 275. Defendants do not advance any substantive argument that "reasonable persons in [their] position would not have understood that their conduct was within the scope of [that] established prohibition." *Barnes v. Furman*, 629 F. App'x 52, 56–57 (2d Cir. 2015) (internal quotation marks omitted). Accordingly, Defendants have not established their entitlement to qualified immunity, and their motion for summary judgment on Plaintiff's free exercise claim is denied.

## B. RLUIPA

The Court notes that Plaintiff does not specifically cite the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, in his Amended Complaint. However, given Plaintiff's pro se status, this Court is obligated to construe the Amended Complaint to raise the strongest arguments it suggests. *See Joseph v. Fischer*, No. 08-CV-2824 (PKC) (AJP), 2009 WL 3321011, at *17 n.7 (S.D.N.Y. Oct. 8, 2009) (citing *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). In keeping with that obligation, this Court construes Plaintiff's allegations in the Amended Complaint that his religious items were confiscated as

raising both a Free Exercise and RLUIPA claim. *Id.*; *see also Covington v. Mountries*, No. 13-
CV-343 (VEC), 2014 WL 2095159, at *3 (S.D.N.Y. May 20, 2014) (construing pro se plaintiff's
claims as free exercise and RLUIPA claims, despite Plaintiff's failure to cite any specific statutes
or constitutional provisions in his complaint).

RLUIPA mandates that the government "shall not impose a substantial burden on the
religious exercise of inmates in certain institutions unless the government shows that the burden
furthers a compelling governmental interest by the least restrictive means." *Covington*, 2014 WL
2095159, at *5 (internal quotation marks omitted). RLUIPA, thus, imposes a standard that is
even more protective of Plaintiff's free religious exercise than the First Amendment. *See*
*Vasquez v. Rockland Cty.*, No. 15-CV-8912 (KMK), 2017 WL 456473, at *8 (S.D.N.Y. Feb. 1,
2017) (noting that RLUIPA "provides a more stringent standard than does the First Amendment"
(internal quotation marks omitted) (citing *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014)).

Defendants fail to advance any argument regarding the application of RLUIPA's heightened
scrutiny to Plaintiff's claims. Instead, Defendants argue that any RLUIPA claim must fail
because claims for monetary damages against state officials are not available under the statute
and any claims for injunctive relief have been rendered moot by Defendant Pierce's retirement.
(Defs.' Reply at 9, ECF No. 45.)

While Defendants are correct that "RLUIPA does not authorize claims for monetary damages
against state officers in either their official or individual capacities," the statute does provide for
injunctive relief. *Holland*, 758 F.3d at 224. Further, Defendant Pierce's retirement does not do
away with the entirety of Plaintiff's claim for such relief. Plaintiff's Amended Complaint may
fairly be read to assert a RLUIPA claim against *both* Defendants Pierce and Maxwell. (*See* Am.
Compl. at 3–4.) The Court agrees that Defendant Pierce's retirement renders any claim for

injunctive relief against him moot. *See McKethan v. New York State Dep't of Corr. Servs.*, No. 10-CV-3826 (PAE), 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012) (finding plaintiff's claims moot where an injunction against a retired DOCCS employee would be futile); *Corr. Officers Benevolent Ass'n. v. Kralik*, No. 04-CV-2199 (PGG), 2009 WL 856395, at *8 (S.D.N.Y. Mar. 26, 2009) (dismissing claims against a defendant who no longer had "the official capacity necessary to enable him to comply with the injunctive relief sought"). However, Defendants fail to explain why Defendant Pierce's retirement would similarly moot a claim for injunctive relief against Defendant Maxwell. Nor do Defendants advance any argument that Defendant Maxwell's liability pursuant to RLUIPA can be resolved as a matter of law. Accordingly, this Court finds that Defendants have not carried their burden of showing that Defendant Maxwell is entitled to summary judgment on the record in this case. *See Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." (internal quotation marks omitted)). Thus, Defendants' motion for summary judgment on Plaintiff's RLUIPA is granted as to Defendant Pierce and denied as to Defendant Maxwell.

## II. First Amendment Retaliation Claims

Plaintiff additionally contends that Defendant Maxwell has orchestrated a campaign of retaliation against him since his arrival at Sullivan that has included twice per week cell searches and frequent drug testing. (*See generally* Am. Compl.) Purportedly, these retaliatory acts are the result of (1) Plaintiff serving as a witness against Defendant Maxwell in a federal lawsuit brought by another inmate, (2) Plaintiff giving at least one signed statement to the New York

State Police in connection with the death of an inmate at Sullivan Correctional Facility, (3) Plaintiff's numerous grievances and frequent letters to the Superintendent; and (4) Plaintiff's activities as a "paralegal" in the facility's law library. (*Id.*)

Defendants contend, however, that Plaintiff has failed to offer any evidence to support key elements of his retaliation claims. This Court disagrees.

To establish a First Amendment retaliation claim, a Plaintiff must prove "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). Here, Plaintiff claims that Defendants subjected him both to retaliatory cell searches and drug testing. The Court now considers each of these claims in turn.

### A. Retaliatory cell searches and confiscation of property

There is no dispute that Plaintiff has engaged in some protected conduct. While Defendants contend that Plaintiff never served as a witness against Defendant Maxwell in any lawsuit and that his actions as a law library paralegal are not protected speech, Defendants concede that prison grievances and Plaintiff's statement to New York State Police concerning the death of a fellow inmate *do* constitute protected speech. (Defs.' Mot. at 11); *see also Albritton v. Morris*, No. 13-CV-3708 (KMK), 2018 WL 1609526, at *18 (S.D.N.Y. Mar. 29, 2018) ("It is well-established that inmates' filing of grievances is a constitutionally protected exercise of their right under the First Amendment to petition the government for the redress of grievances." (internal quotation marks omitted)). Plaintiff, therefore, satisfies the first prong of the test.

Moreover, Plaintiff raises a triable issue of fact regarding the second prong—whether Defendants engaged in an adverse action. An adverse action is any action "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). "The question of whether a given action is sufficiently adverse to deter someone of 'ordinary firmness from exercising his rights' under the First Amendment is a question of fact." *Sanchez v. Velez*, No. 08-CV-1519 (NRB), 2009 WL 2252319, at *4 (S.D.N.Y. July 24, 2009); *see also Espinal*, 558 F.3d at 129.

Here, Plaintiff testified during his deposition that Defendant Pierce searched his cell and confiscated important legal work as well as items of religious significance, all at the direction of Defendant Maxwell. [3] (Hammock Dep. at 12:12-25, 21:15–22: 25, 39:5–45:20.) "[M]any of the district courts in the Second Circuit have found that cell searches, even if conducted for retaliatory reasons, cannot constitute an adverse action for the purposes of a retaliation claim." *Guillory v. Haywood*, No. 13-CV-01564 (MAD), 2015 WL 268933, at *21 (N.D.N.Y. Jan. 21, 2015). However, "allegations that a defendant confiscated personal property and/or legal papers during the course of a cell search *have* been found sufficient to deter an inmate of ordinary firmness form exercising his constitutional rights." *Id.* (emphasis added); *see also Stewart v. Richardson*, No. 15-CV-9034 (VB), 2016 WL 7441708, at *5 (S.D.N.Y. Dec. 27, 2016) ("Considered collectively, as they ought to be, plaintiff's allegations of retaliatory cell searches and destruction of his property are sufficient to state a claim."); *Smith v. City of New York*, No.

---

[3] Although Plaintiff's cell was searched twenty-six times during his incarceration at Sullivan, the record reflects that Defendants Maxwell and Pierce were only involved in one of those twenty-six searches. (Maxwell Decl. ¶¶ 9–12, Ex. Cell Frisk Log Book.) Twenty-four of the remaining searches were random—that is, conducted pursuant to a computer-generated list—and the last search was not authorized or conducted by either Defendant. (*Id.*). Accordingly, those twenty-five searches are irrelevant to Plaintiff's retaliation claim against Defendants Pierce and Maxwell.

14-CV-5927, 2017 WL 2172318, at *4 (S.D.N.Y May 16, 2017) ("[T]he confiscation or destruction of property taken at the time of searches may constitute an adverse action" (internal quotation marks omitted)); *Smith v. City of New York*, No. 03-CV-7576, 2005 WL 1026551, at *3 (S.D.N.Y May 3, 2005) ("[R]etaliatory destruction of a prisoner's personal property has previously been found substantial enough to qualify as an adverse action"). Plaintiff's testimony is, thus, sufficient to establish a genuine issue of fact as to whether Defendants engaged in any adverse action.

Plaintiff similarly raises a triable issue of fact regarding the third and final prong of this retaliation claim—the causal connection between his protected conduct and the purported adverse action. Significantly, Plaintiff need not provide direct evidence of a retaliatory motive to support a retaliation claim. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003). Rather a retaliatory motive may be inferred from a number of circumstantial factors, including, *inter alia*, "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter, and (iv) statements by the defendant concerning his motivation." *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks omitted).

In the present action, Plaintiff has provided sufficient evidence from which a retaliatory motive may be inferred. First, Plaintiff testified during his deposition that Defendant Pierce stated that he was sent to search Plaintiff's cell because Plaintiff "like[s] to make statements"— ostensibly referring to the signed statement Plaintiff had submitted a few weeks prior to the New York State Police in connection with the death of a fellow inmate at Sullivan. (Hammock Dep. at 12:16-25.) Further, although Plaintiff was eventually found guilty of possessing property in an unauthorized area and unauthorized medication (including three outdated medical inhalers), he

was found *not guilty* of possessing altered items or contraband following a disciplinary hearing. (Pierce Decl., Ex. D, Disciplinary Hearing Disposition.) Plaintiff was, thus, vindicated of any accusation that he possessed a weapon, which Defendants assert justified the search. If deemed credible, Plaintiff's testimony regarding Defendant Pierce's statements, coupled with the temporal proximity of the cell search to Plaintiff's protected conduct and Plaintiff's eventual vindication, *could* support a reasonable inference that Defendants Pierce and Maxwell harbored a retaliatory motive. Therefore, genuine issues of fact remain as to whether Defendants engaged in any adverse action, and if so, whether that adverse action was motivated by Plaintiff's protected conduct.

Defendants contend that they are nevertheless entitled to qualified immunity because the law was not clearly established that cell searches, even if done in retaliation, violated the constitution. (Defs.' Mot. at 24.) However, the Second Circuit has expressed some doubt about the applicability of qualified immunity defenses to First Amendment retaliation claims. *See Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2001) (summ. order). Such claims, the Second Circuit reasoned, explicitly require an improper retaliatory motive on the part of the defendant, and "'where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.'" *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001) (noting that "a plaintiff need only show particularized evidence of direct or circumstantial facts supporting his claim of unconstitutional motive in order to survive a motion for summary judgment on the defense of qualified immunity." (internal quotation marks omitted)); *see also Torres v. LaLota*, No. 15-CV-157097 (JMA)(AYS), 2017 WL 4457514, at *9 (E.D.N.Y. Aug. 14, 2017), *report and recommendation adopted*, 2017 WL 4443578 (E.D.N.Y.

Sept. 30, 2017). Because Plaintiff has raised a triable issue of fact regarding Defendants' improper retaliatory motive, Defendants are not entitled to qualified immunity at this juncture.

Defendants' motion for summary judgment on Plaintiff's retaliation claim relating to the search of his cell and confiscation of his property is, thus, denied.

### B. Retaliatory drug testing

Defendants additionally contend that they entitled to summary judgment on Plaintiff's First Amendment retaliation claim stemming from his frequent drug testing because Plaintiff has failed to provide any evidence establishing a causal connection between his protected conduct and the alleged adverse action. This Court agrees and grants Defendants' motion for summary judgment.

The Court again notes that Plaintiff has indisputably engaged in some protected conduct. However, whether the numerous drug tests to which Plaintiff was subjected constitute an adverse action is a closer question. *Compare Holmes v. Fischer*, No. 09-CV-00829 (F), 2016 WL 552962, at *10 (W.D.N.Y. Feb. 10, 2016) ("Insofar as urinalysis involves both embarrassment and potential punishment, being required to submit to a urinalysis constitutes an adverse action." (internal quotation marks and citations omitted)), *with Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("Urine tests are a fact of prison life, and I do not find that one urine test would chill a prisoner of ordinary firmness from filing grievances." (internal citations omitted)). Nevertheless, the Court need not linger on this issue.

Even assuming that urinalysis constitutes an adverse action, Plaintiff fails to raise any issue of fact regarding the third prong of his retaliation claims—the causal link between Defendants' actions and his protected conduct. Pursuant to DOCCS Directive 4937, "[u]rinalysis testing of inmates *shall* be conducted," *inter alia*, "[p]rior to and after an inmate participates in a

Family Reunion Program visit," and "[a]s part of a computer-generated program for random testing for all inmates." (Maxwell Decl. ¶ 13, Ex. E (Dir. 4937) ¶ IV(A)(6) & (7) (emphasis added)). The Directive further authorizes testing "[w]hen correctional staff has reason to believe the inmate has used drugs or alcohol." (*Id.* ¶ IV(A)(1).)

Although Plaintiff has been subjected to drug testing approximately twenty-one times during the course of his incarceration at Sullivan, each of those tests was either random (i.e., computer-generated) or routine (conducted prior to or following a family visit). (Maxwell Decl. ¶ 15, Ex. F, Inmate Drug Testing System DIN Inquiry.) Because the tests were mandatory and not conducted pursuant to Defendants' own personal discretion, Plaintiff cannot establish the necessary causal link between his protected conduct and the purported adverse action. Indeed, Plaintiff would have been subjected to those tests regardless of any retaliatory motives. Accordingly, summary judgment is granted in favor of Defendants with respect to Plaintiff's urinalysis retaliation claim. *See Scott v. Coughlin*, 344 F.3d 282, 287–88 (2d Cir. 2003) ("Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show . . . that even without the improper motivation, the alleged retaliatory action would have occurred.")

### III. Access to Courts

Plaintiff also contends that Defendants impermissibly infringed his right of access to the courts by confiscating various legal documents, including Plaintiff's only copy of his first criminal trial transcript and a draft of his habeas corpus petition. (Am. Compl. at 4; Hammock Dep. at 74:25–75:6, 91:20–92:8.) Defendants counter that there is no record of Defendant Pierce confiscating Plaintiff's legal materials, but even if there was, Plaintiff has failed to allege an injury sufficient to sustain a claim. (Defs.'s Mot. at 16.) This Court agrees and grants summary

judgment in Defendants' favor.

"To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Vasquez*, 2017 WL 456473, at *6 (internal quotation marks omitted) (quoting *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010); *see also Montanez v. Cuoco*, 361 F. App'x 291, 294 (2d Cir. 2010) (summ. order)).

As an initial matter, the Court notes that whether Defendant Pierce actually confiscated Plaintiff's legal work is a disputed question of fact not suitable for resolution at the summary judgment stage. Nevertheless, even assuming Defendant Pierce did, in fact, confiscate Plaintiff's documents, Plaintiff has failed to show that he suffered any *actual* injury.

To establish an injury sufficient to state an access to courts claim, a plaintiff must show that defendants' "conduct materially prejudiced a legal action he sought to pursue." *Ceparano v. Cty. of Suffolk*, No. 10-CV-2030 (SJF) (AKT), 2013 WL 6576817, at *6 (E.D.N.Y. Dec. 13, 2013) (internal quotation marks omitted) (quoting *Covino v. Reopel*, 108 F.3d 1369 (Table), 1997 WL 138856, at *1 (2d Cir. May 18, 1997)). Notably, courts in this Circuit typically find such material prejudice only where a plaintiff shows that the defendant's conduct resulted in "an adverse ruling, sanction or dismissal" of the underlying action. *West v. Rivera*, No. 13-CV-3965 (RA), 2015 WL 997788, at *3 (S.D.N.Y. Mar. 6, 2015); *see also Vasquez*, 2017 WL 456473, at *6 (noting that a plaintiff may satisfy the actual injury requirement by showing that she "has been unable to file a complaint or [has] had a complaint dismissed for failure to observe a technicality" (internal quotation marks omitted) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001)); *cf. Smith v. Maypes-Rhynders*, No. 07-CV-11241 (PAC) (MHD), 2009 WL 874439, at *7–8 (S.D.N.Y. Mar. 31, 2009) (finding allegation that but for the defendants'

confiscation of important legal documents, the plaintiff would have prevailed in a state court lawsuit sufficient to state a claim). In contrast, "[m]ere delay in being able to work on one's legal action or communicate with the courts does *not* rise to the level of a constitutional violation." *Bradshaw v. City of New York*, No. 15-CV-9031 (JPO), 2017 WL 325260, at *3 (S.D.N.Y. Jan. 23, 2017) (emphasis added) (internal quotation marks omitted) (quoting *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016)).

Here, Plaintiff does not contend that he faced any adverse ruling, sanction, or dismissal in his underlying habeas action. Indeed, Plaintiff testified during his deposition that he can file the petition—his second attempt at procuring federal habeas relief—at any time. (Hammock Dep. at 98:10– 99:3.) Plaintiff has, thus, failed to raise a triable issue of fact regarding any actual injury he suffered as a result of Defendants' actions. Despite the confiscation of his legal work, Plaintiff may still acquire another trial transcript and re-draft this second habeas petition.[4] Thus, though undoubtedly inconvenient and perhaps demoralizing, the confiscation of Plaintiff's legal documents has not foreclosed Plaintiff's habeas relief. By Plaintiff's own account, Defendants actions have, at most, resulted in a delay in litigating his claim rather than a complete denial of his access to the courts. *See Ceparano v. Cty. of Suffolk*, No. 10-CV-2030 (SJF)(AKT), 2013 WL 6576817, a *6 (E.D.N.Y. Dec. 13, 2013) (finding a plaintiff's contention that his research and a draft of a motion he was about to file were destroyed "at most establishe[d] that plaintiff was

---

[4] Plaintiff admitted during his deposition that he has not made any attempts to procure another copy of his trial transcript. (Hammock Dep. at 92:19– 93:14, 96:19–97:8.) While Plaintiff claims that any such attempts would be futile, Plaintiff cannot rely on mere conjecture in an effort to establish his injury. *See Allen v. Murray-Lazarus*, 463 F. App'x 14, 16 (2d Cir. 2012) (summ. order) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." (internal quotations omitted) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).

temporarily inconvenienced by [the defendant's] actions").[5] Accordingly, Defendants' motion

for summary judgment on Plaintiff's access to the courts claim is granted.

## IV. Eleventh Amendment Immunity

Defendants maintain that they are entitled to summary judgment on Plaintiff's claims for

monetary damages against them in their official capacities. (Defs.' Mot. at 23.) This Court

agrees.

"[T]he Second Circuit has held that '[t]o the extent that a state official is sued for damages in

[his] official capacity, such a suit is deemed to be a suit against the state, and the official is

entitled to invoke the Eleventh Amendment immunity belonging to the state.'" *Davis v.*

*Westchester Cty. Family Court*, No. 16-CV-9487 (KMK), 2017 WL 4311039, at *6 (S.D.N.Y.

Sept. 26, 2017) (quoting *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)). The

Eleventh Amendment generally "forbids suits against states for monetary damages." *Kirkendall*

*v. Univ. of Connecticut Health Ctr.*, 205 F.3d 1323 (2d Cir. 2000) (Table). Thus, Defendant's

---

[5] In addition to the aforementioned constitutional claims, Plaintiff included language resembling a Fourteenth Amendment equal protection claim in his opposition to Defendants' motion for summary judgment. (Pl.'s Opp. to Defs.' Mot. for Summ. J. at 8, ECF No. 44. ) However, the Amended Complaint is devoid of any allegations that Plaintiff was treated differently than any other group of inmates and, therefore, cannot be construed to allege an equal protection claim. While the Court must read a pro se plaintiff's complaint to raise the strongest arguments it presents, the Court need not consider claims that are raised entirely for the first time in a pro se plaintiff's opposition to a motion. *See Cohen v. New York*, 481 F. App'x 696, 697 (2d Cir. 2012) (summ. order); *Salemo v. Murphy*, No. 11–CV–2525, 2012 WL 4714765, at *2 (S.D.N.Y. Sept. 27, 2012) ("[A]lthough courts afford pro se plaintiffs a fair measure of procedural latitude, this latitude typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers." (internal citation omitted)). Therefore, this Court will not consider Plaintiff's equal protection claim.

In any event, even if this Court were to consider Plaintiff's new conclusory allegations, they would be insufficient to state an equal protection claim because Plaintiff fails to identify any similarly-situated comparator. *See Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (summ. order) (affirming dismissal of equal protection claim where plaintiff failed to identify a similarly situated comparator).

motion for summary judgment on Plaintiff's claims for monetary damages against them in their official capacities is granted. As Defendants concede, however, Eleventh Amendment immunity does not preclude Plaintiff's claims for monetary damages against Defendants in their individual capacities. (Defs'. Mot. at 23.); *see also Ford v. Reynolds*, 316 F.3d 351, 356 (2d Cir. 2003) (noting that the Eleventh Amendment "does not extend to a suit against a state official in his [or her] individual capacity" (internal quotation marks omitted)).

I.      **State Law Claims**

Finally, Defendants argue that to the extent Plaintiff asserts state law claims, such claims are barred by the New York Correctional Law § 24. (Defs.' Mot. at 25.) Section 24 provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of duties by such officer or employee." N.Y. Correct. Law § 24. The Second Circuit has held that defendants "are entitled to invoke the benefits of § 24" in federal court. *Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996). Thus, because Plaintiff does not contend that Defendants acted outside of the scope of their employment, any state law claims for monetary damages against Defendants in their individual capacities are barred by § 24.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's (i) RLUIPA claim against Defendant Pierce, (ii) urinalysis retaliation claim, (iii) access to the courts claim, (iv) claims for monetary damages against Defendants in their official capacity, and (v) state law claims. Plaintiff's free exercise claim, RLUIPA claim against Defendant Maxwell, and retaliation claims relating to the search of his cell and confiscation of his property remain. The Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 37.

A pre-trial status conference is scheduled on May 16, 2018 at 11:00 AM. Defendants' counsel is to appear in person and Plaintiff shall appear by telephone. Defendants' counsel is directed to make the necessary arrangements with the appropriate facility for Plaintiff to be available by telephone.


Dated: May 7, 2018                              SO ORDERED:
      White Plains, New York


                                           NELSON S. ROMÁN
                                  United States District Judge